UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hennepin Healthcare System, Inc.,                         Civ. No. 18-2868 (PAM/DTS)
d/b/a Hennepin County Medical Center,

          Plaintiff,

                                                                   **MEMORANDUM AND ORDER**
v.

Freedom Medical, Inc.,

          Defendant.

---

This matter is before the Court on the parties' cross-Motions for Partial Summary Judgment. For the following reasons, the Motions are denied.

**BACKGROUND**

Plaintiff Hennepin County Healthcare System, d/b/a Hennepin County Medical Center ("HCMC"), contracted with Defendant Freedom Medical, Inc., for specialty medical beds. HCMC alleges that the beds were defective and therefore HCMC was forced to cancel the parties' contract. Freedom Medical insists that the parties' agreement did not provide for early termination and thus required HCMC to pay the difference between the discount the parties had negotiated for the equipment and the list price for that equipment, or approximately $600,000. HCMC brought this lawsuit in state court seeking a declaration of its rights under the parties' agreements. Freedom Medical removed the case to this Court, asserting a counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing.

The dispute in this case centers on two contracts. The first is a Capital Equipment Supplier/Group Purchasing Agreement ("GPO Agreement") between Freedom Medical and the equipment-discount wholesaler Novation, now known as Vizient. (Wells Decl. (Docket No. 81).) This agreement required Freedom Medical to supply equipment to Vizient's customers at a discount. HCMC was one of Vizient's customers, denoted in the GPO Agreement as a "Member." The second contract at issue is an Equipment Rental Agreement and two Addenda (collectively, the "ERA"), between Freedom Medical and HCMC. The ERA gave HCMC an even greater discount on Freedom Medical's mattresses than that provided in the GPO.

In 2017, HCMC claims that it began experiencing problems with the mattresses Freedom Medical provided. (Compl. ¶ 18.) HCMC contends that Freedom did not sufficiently address those issues. In March 2018, HCMC notified Freedom Medical that it was terminating the ERA in 60 days. (Vettleson Decl. (Docket No. 73) Ex. FF.) Freedom Medical responded that, if HCMC terminated the agreement, it would consider HCMC in default and would retroactively charge HCMC the difference between the GPO price and the ERA price for the mattresses. (Henry Decl. (Docket No. 71) Ex. B.)

In April 2018, HCMC filed three incident reports regarding the mattresses with the FDA. Those reports were ultimately dismissed, but Freedom Medical contends that HCMC refused to cooperate with Freedom Medical's investigation into the problems, and that refusal forms part of the basis of its good-faith-and-fair-dealing counterclaim. In July 2018, Freedom Medical sent an invoice to HCMC for $601,336.12, the difference between the GPO price and the ERA price for the mattresses HCMC purchased from Freedom

2

Medical. (Compl. Ex. E.) This lawsuit followed.

HCMC's Complaint contains two counts. The first seeks a declaratory judgment under Minn. Stat. Ch. 55 that (1) HCMC is allowed to terminate the parties' contract; and (2) HCMC is not required to pay any penalty to terminate the contract. HCMC's second claim contends that Freedom Medical's failure to make repairs to the mattresses and Freedom Medical's issuance of the $600,000 invoice constituted a breach of contract. As noted, Freedom Medical responded with a counterclaim for breach of contract and breach of the covenant of good faith and fair dealing. (Docket No. 3.)

Freedom Medical seeks summary judgment on its counterclaim, HCMC's request for a declaratory judgment, and HCMC's breach of contract claim as to the invoice. HCMC cross-moved for partial summary judgment, asking for a declaratory judgment under Count I of its Complaint that it was entitled to terminate the contract and it owes no penalty for doing so. HCMC also responded to Freedom Medical's Motion with a Rule 56(d) affidavit, contending that there is outstanding discovery necessary to respond to Freedom Medical's Motion with regard to the good-faith-and-fair-dealing claim.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Two contract provisions underlie these cross-Motions. The first is a provision of the GPO Agreement between Freedom Medical and Vizient with the title "Pricing Enhancements." In relevant part, the provision states,

> In the event that Supplier contracts with a Member(s) for Products . . . Supplier shall [give Vizient notice and allow the disclosure of the enhanced prices to Vizient]. . . . Any Member desiring to avail itself of the pricing, terms, and conditions described in this Agreement may terminate (without penalty) any existing contract(s) with Supplier for the Products.

(Wells Decl. Ex. 7 § 10.)

The second provision is found in the ERA between Freedom Medical and HCMC, under the heading "Default/Noncompliance":

> Customer has committed to utilize FM as primary vendor for the products identified in Exhibit A. If the Customer cancels the contract prior to the expiration date or utilizes another provider as primary vendor for their rentals identified in Exhibit A, then Freedom Medical reserves the right to charge the customer Freedom Medical List price, or charge the applicable customer member GPO list price.

(Compl. Ex. A § 7.)

HCMC argues that Section 10 of the GPO Agreement allows it to terminate any contract with a supplier without penalty. It points to language in the ERA providing that the ERA is "governed by the terms" of the GPO Agreement, and notes that the GPO Agreement provides that it is the "entire agreement between each Member and Supplier. In the Event of any inconsistency . . . the terms of this Agreement shall control." (Wells Decl. Ex. 7 § 19.P.) HCMC also contends that the ERA's cancellation provision is not retroactive. In other words, according to HCMC, this provision means only that Freedom Medical is entitled to charge HCMC the GPO price for any equipment HCMC buys from

Freedom Medical after HCMC terminates the ERA.

Freedom Medical argues that HCMC's reading of the provisions at issue is nonsensical. It notes that it signed the GPO Agreement with Vizient months before it entered into any contract with HCMC, so that there was no "existing contract" that HCMC could terminate. Freedom Medical also contends that the only reasonable interpretation of the "existing contract" language of Section 10 is that a Member can cancel contracts it might have had with a Supplier before entering into the group-purchasing arrangement through Vizient. And Freedom Medical argues that reading the ERA to provide only a forward-looking penalty is also nonsensical, as such a "penalty" does not compensate Freedom Medical for its investment in personnel and time providing equipment to HCMC.

Both sides contend that the contracts are unambiguous and support their reading of the provisions quoted above. In Minnesota, a court interpreting a contract must first determine whether the contract is ambiguous. Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004). "Whether there is ambiguity in a contract is a legal determination in the first instance." Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979). "If the language of a written contract is unambiguous, then courts discern the parties' intent from the plain language alone." Boston Scientific Corp. v. Sprenger, 903 F. Supp. 2d 757, 762 (D. Minn. 2012) (Keyes, M.J.). "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." Winthrop Res. Corp. v. Sabert Corp., 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008) (Schiltz, J.). Construction of an unambiguous contract is a question of law for the Court to decide. Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997).

Section 10 of the GPO Agreement is unambiguous. It states that a Member may terminate any "existing" contract with a Supplier in the context of the Member and Supplier entering into a new agreement for "enhanced" pricing. This clearly means that, if HCMC and Freedom Medical had a contract for equipment before Freedom Medical became a preferred supplier with Vizient, HCMC could cancel that pre-existing contract and instead take advantage of both the lower prices in the GPO Agreement as well as the "enhanced" prices in the ERA. Section 10 of the GPO Agreement provides no authority for HCMC to terminate the ERA without any consequences.[1]

The language of Section 7 of the ERA, however, is susceptible of more than one reasonable interpretation. The section does not specify that Freedom Medical may charge a retroactive penalty for early termination. Rather, it states that Freedom Medical may "charge the customer Freedom Medical list price." (Compl. Ex. A. § 7.) Freedom Medical's argument that a forward-looking penalty is no penalty at all is an attractive one, but HCMC's interpretation of the provision is also reasonable. And the construction of an ambiguous contract is a question of fact for the jury. Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc., 913 N.W.2d 687, 692 (Minn. 2018). Thus, summary judgment is not appropriate on the parties' claims with regard to the invoice. Because both parties' breach-of-contract claims depend on their interpretation of this provision, their Motions as to those claims must be denied.

---

[1] There seems to be no disagreement that HCMC could withdraw from the ERA before the end of the ERA's term. The only disagreement is as to the consequences for that early withdrawal. Thus, HCMC's request for a declaratory judgment that it was entitled to terminate the ERA is moot.

Nor is judgment appropriate on Freedom Medical's good-faith/fair-dealing claim. This claim contends that HCMC's alleged refusal to cooperate in the repair of the mattresses and other conduct related to the allegedly defective mattresses amounted to a breach of HCMC's duty of good faith and fair dealing under the party's contract. But there are multiple factual disputes on this issue. Freedom Medical's Motion on this claim is denied.

**CONCLUSION**

Factual disputes preclude the entry of summary judgment. Accordingly, **IT IS HEREBY ORDERED that**

1. HCMC's Motion for Partial Summary Judgment (Docket No. 62) is **DENIED**; and

2. Freedom Medical's Motion for Partial Summary Judgment (Docket No. 68) is **DENIED**.

Dated: October 22, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge